IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO. 5:13-CV-027-RLV-DCK

| | |
|---|---|
| **MAY ELIZABETH CARROLL,** | ) |
| **Plaintiff,** | ) ) ) |
| v. | ) **MEMORANDUM AND** ) **RECOMMENDATION** |
| **CAROLYN W. COLVIN,**[1] **Acting Commissioner of Social Security,** | ) ) ) ) |
| **Defendant.** | ) ) ) |

**THIS MATTER IS BEFORE THE COURT** on Plaintiff's "Motion For Judgment On The Pleadings" (Document No. 14) and Defendant's "Motion For Summary Judgment" (Document No. 20). This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b)(1)(B). After careful consideration of the written arguments, administrative record, and applicable authority, the undersigned will respectfully recommend that Plaintiff's "Motion For Judgment On The Pleadings" be <u>denied</u>; that Defendant's "Motion For Summary Judgment" be <u>granted</u>; and that the Commissioner's decision be <u>affirmed</u>.

### I.  BACKGROUND

Plaintiff May Elizabeth Carroll ("Plaintiff"), through counsel, seeks judicial review of an unfavorable administrative decision on her application for disability benefits. (Document No. 1). On April 27, 2009, Plaintiff filed an application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 405 *et seq*., and for

---

[1] Carolyn W. Colvin is the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as Defendant in this suit.

supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. § 1383 *et seq*., alleging an inability to work due to a disabling condition beginning March 25, 2008. (Transcript of the Record of Proceedings ("Tr.") 24, 186-192, 193-200). The Commissioner of Social Security (the "Commissioner" or "Defendant") denied Plaintiff's application initially on October 5, 2009, and again after reconsideration on January 5, 2010. (Tr. 24, 120-123, 124-127, 130-132, 133-135). In its "Explanation Of Determination," the Social Security Administration ("SSA") included the following explanation of its decision:

> The medical evidence shows that not all of your work related activities are restricted. The evidence does not show any other condition which would significantly limit your ability to work. Additionally, any symptoms, such as pain, were considered in deciding this claim. We realize that your condition prevents the return to any past jobs. However, it does not prevent doing lighter work that does not require more than occasional crawling, ladders, ropes, and scaffolds. Based on your age (043 years and 10 months), education (12 GRADE 12), and past work experience, we have determined that your overall medical condition allows the performance of other work.

(Tr. 123); see also, (Tr. 127, 132, 135).

Plaintiff filed a timely written request for a hearing on February 17, 2010. (Tr. 24, 136-137). On April 29, 2011, Plaintiff appeared via video conference in Fort Wayne, Indiana before Administrative Law Judge John S. Pope ("ALJ") presiding over the hearing from Chicago, Illinois. (Tr. 24, 67-114). In addition, Leonard M. Fisher, a vocational expert ("VE"), Steve Carroll, Plaintiff's husband, and Joseph W. Shull, Plaintiff's attorney, appeared at the hearing. Id.

The ALJ issued an unfavorable decision on August 23, 2011, denying Plaintiff's claim. (Tr. 21-35). Plaintiff filed a request for review of the ALJ's decision on October 27, 2011, which was denied by the Appeals Council on November 14, 2012. (Tr. 17-20, 4-6). The August

23, 2011 ALJ decision thus became the final decision of the Commissioner when the Appeals Council denied Plaintiff's review request. (Tr. 4).

Plaintiff's "Complaint" seeking a reversal of the ALJ's determination was filed in this Court on February 14, 2013. (Document No. 1). Also on February 14, 2013, the undersigned was assigned to this case as the referral magistrate judge.

Plaintiff's "Motion For Judgment On The Pleadings" (Document No. 14) and "Plaintiff's Memorandum In Support Of Motion For Judgment On The Pleadings" (Document No. 15) were filed August 7, 2013; and Defendant's "Motion For Summary Judgment" (Document No. 20) and "Memorandum In Support Of The Commissioner's Motion For Summary Judgment" (Document No. 21) were filed December 5, 2013. The pending motions are ripe for disposition, and therefore, a memorandum and recommendation to the Honorable Richard L. Voorhees is now appropriate.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner applied the correct legal standards. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

The Fourth Circuit has made clear that it is not for a reviewing court to re-weigh the evidence or to substitute its judgment for that of the Commissioner – so long as that decision is supported by substantial evidence. Hays, 907 F.2d at 1456 (4th Cir. 1990); see also, Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); Hancock v. Astrue, 657 F.3d 470, 472 (4th Cir. 2012). "Substantial evidence has been defined as 'more than a scintilla and [it] must do more

than create a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401).

Ultimately, it is the duty of the Commissioner, not the courts, to make findings of fact and to resolve conflicts in the evidence. Hays, 907 F.2d at 1456; King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979) ("This court does not find facts or try the case de novo when reviewing disability determinations."); Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion."). Indeed, so long as the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court disagrees with the final outcome. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

### III. DISCUSSION

The question before the ALJ was whether Plaintiff was under a "disability" as that term of art is defined for Social Security purposes, at any time between March 25, 2008, and December 31, 2012.[2] (Tr. 24). To establish entitlement to benefits, Plaintiff has the burden of proving that she was disabled within the meaning of the Social Security Act. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

The Social Security Administration has established a five-step sequential evaluation process for determining if a person is disabled. 20 C.F.R. § 404.1520(a). The five steps are:

---

[2] Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an: inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

(1) whether claimant is engaged in substantial gainful activity - if yes, not disabled;

(2) whether claimant has a severe medically determinable physical or mental impairment, or combination of impairments that meet the duration requirement in § 404.1509 - if no, not disabled;

(3) whether claimant has an impairment or combination of impairments that meets or medically equals one of the listings in appendix 1, and meets the duration requirement - if yes, disabled;

(4) whether claimant has the residual functional capacity ("RFC") to perform her/his past relevant work - if yes, not disabled; and

(5) whether considering claimant's RFC, age, education, and work experience he/she can make an adjustment to other work - if yes, not disabled.

20 C.F.R. § 404.1520(a)(4)(i-v). In this case, the ALJ determined at the fifth step that Plaintiff was not disabled. (Tr. 34-35).

Specifically, the ALJ first concluded that Plaintiff had not engaged in any substantial gainful activity since March 25, 2008, her amended alleged disability onset date. (Tr. 26). The ALJ noted that Plaintiff had worked after the alleged onset date, but that her work did not rise to the level of substantial gainful activity. Id.

At the second step, the ALJ found that degenerative disc disease and obesity were severe impairments.³ (Tr. 27). At the third step, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. 404, Subpart P, Appendix 1. (Tr. 28).

---

³ The determination at the second step as to whether an impairment is "severe" under the regulations is a *de minimis* test, intended to weed out clearly unmeritorious claims at an early stage. See Bowen v. Yuckert, 482 U.S. 137 (1987).

Next, the ALJ assessed Plaintiff's RFC and found that she retained the capacity to perform sedentary work activity, with the following limitations:

> she must use a cane to ambulate, and she may only occasionally climb ladders, ropes, scaffolds, and crawl, and only frequently climb ramps and stairs, balance, stoop, kneel, and crouch.

(Tr. 28). In making his finding, the ALJ specifically stated that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p." Id. The ALJ further opined that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 30). At the fourth step, the ALJ found that Plaintiff could not perform her past relevant work as an assembler, CNA, cook, packer, or washer. (Tr. 34).

At the fifth and final step, the ALJ concluded based on the testimony of the VE and "considering the claimant's age, education, work experience, and residual functional capacity" that jobs existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 34). Specifically, the VE testified that according to the factors given by the ALJ, occupations claimant could perform included representative occupations such as Hand Mounter DOT # 976.684-018; Surveillance System Monitor DOT # 379.367-010; Coat-Brake Lines DOT # 574-685-010; and Addresser DOT # 209.587-010. (Tr. 35). Therefore, the ALJ concluded that Plaintiff was not under a "disability," as defined by the Social Security Act, at any time between March 25, 2008, and the date of his decision, August 23, 2011. (Tr. 35).

Plaintiff on appeal to this Court makes the following assignments of error: (1) the ALJ failed to evaluate the medical opinion of Plaintiff's treating physician; and (2) the ALJ improperly assessed Plaintiff's RFC by not considering the effects of Plaintiff's right ankle pathologies, or her alleged need for a walker, on her ability to work. (Document No. 15, p.1). The undersigned will discuss each of these contentions in turn.

**A.     Medical Provider Opinion**

In her first assignment of error, Plaintiff notes that an ALJ must carefully weigh the opinions of medical sources by considering several factors including length of treatment relationship, frequency of examination, nature and extent of treatment relationship, supportability, consistency and specialization. (Document No. 15, p.10) (citing 20 C.F.R. § 404.1527(d)). Moreover, Plaintiff contends that unless significant evidence contradicts the medical opinions of a claimant's treating physicians, such treating physician opinions must be given controlling weight. Id. (citing Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001).

Plaintiff argues that in this case the ALJ

> committed **significant error by not even considering the opinion of Dr. Hedrick**, Ms. Carroll's treating physician. The ALJ considered the opinion of Dr. Merkle who had not seen her in several years and the opinion of her nurse practitioner, yet he **failed to even mention, much less weigh, the opinion of her treating physician**.

(Document No. 15, pp.10- 11) (emphasis added) (citing Tr. 32). Plaintiff asserts that the ALJ should have given Dr. Hedrick's opinion significant, if not controlling weight, but that the ALJ failed to even consider his opinion. Id. Plaintiff notes that Dr. Hedrick treated Plaintiff for two years on a monthly basis and is a specialist in pain management. (Document No. 15, p.11). Plaintiff concludes that Dr. Hedrick's "opinion is supported by his own treatment notes as well as the diagnostic evidence which confirms the presence of nerve root irritation in her spine." Id.

7

As an initial matter, the undersigned observes that the ALJ made several references to the care and treatment Plaintiff received from Dr. Hedrick and his staff. For example, quoting Plaintiff, the ALJ notes:

> For treatment, she said she has seen Dr. Hedrick once a month for the past year, who provides pain management medication and back injections. The claimant said she has not seen any other doctor for her back. The claimant stated that Dr. Hendricks restricted her from lifting over ten pounds, no bending or twisting, and only sitting and standing as long as she could tolerate. For medication, the claimant said that she currently takes all of the medications listed in Exhibit 15E. She said her medications manage her pain, but she is still in pain.

(Tr. 29) (citing Tr. 326, "Claimant's Medications"); see also (Tr. 78-79). "Claimant's Medications" indicates that all the listed medications were prescribed by Dr. Hedrick. (Tr. 326).

In addition, the ALJ's decision included a thorough discussion of Dr. Hedrick's treatment, citing numerous documents in the medical record. (Tr. 31) (citing 391-410, 413-419, 420-426, 427-479, 480). The ALJ specifically discussed, *inter alia*, Dr. Hedrick's: treatment relationship with Plaintiff, including history and frequency of Plaintiff's visits; findings regarding Plaintiff's pain; physical examinations and observations of Plaintiff, and that Dr. Hedrick ordered a walker for Plaintiff, which she started using on February 3, 2011. Id. Finally, the ALJ noted, but gave little weight to, a restriction worksheet completed by a nurse practitioner from Dr. Hedrick's office. (Tr. 32).

Based on the foregoing, the undersigned finds Plaintiff's argument that the ALJ erred by failing to even mention or consider the opinion of Dr. Hedrick to be unpersuasive. (Document No. 15, pp.10-11). Review of the ALJ's decision indicates that not only did the ALJ mention and consider Dr. Hedrick's opinion, he cited and summarized Dr. Hedrick's medical records, and apparently incorporated Dr. Hedrick's findings in Plaintiff's RFC. (Tr. 28-29, 31). Moreover,

the ALJ explicitly cited most of the same records cited by Plaintiff's brief. See (Tr. 31 and Document No. 15, p.11). In fact, the only portions of the record cited by Plaintiff but not cited by the ALJ are a "Function Report" (Tr. 276) completed by Plaintiff, and a "Leuro Diagnostic Testing" report (Document No. 357) signed by Dr. George W. Merkle. See (Document No. 15, p.11). Neither of those documents support the contention that Dr. Hedrick's opinion was not considered.[4]

Defendant's argument focuses on refuting the suggestion that the ALJ's failure to explicitly discuss "Dr. Hedrick's checklist" (Tr. 449, 477) requires remand. Defendant asserts that "checklists such as the one completed by Dr. Hedrick are entitled to relatively little weight." (Document No. 21, p.3) (citing 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3)).

While it is less clear to the undersigned that the ALJ's treatment of a checklist is at the center of Plaintiff's alleged error, Defendant's argument is nevertheless persuasive and applicable. In pertinent part, Defendant "acknowledges that the ALJ in the instant case did not expressly discuss Dr. Hedrick's checklist, although he did discuss several of Dr. Hedrick's opined limitations." (Document No. 21, p.3). Defendant also notes that Plaintiff's assertions fail to "accurately characterize the record":

> In fact, the ALJ explicitly mentions several of Dr. Hedrick's opined limitations (Tr. 29, referring to Tr. 79). To be clear, although the ALJ cites Plaintiff's testimony concerning these opined limitations (as opposed to citing Dr. Hedrick's checklist), he explicitly attributes the alleged restrictions to Dr. Hedrick (*id.*).

---

[4] The undersigned finds Plaintiff's characterization of the ALJ's decision inaccurate and misleading. While Plaintiff may disagree with the weight afforded Dr. Hedrick's opinion, that is a different issue than an allegation that the ALJ completely failed to consider, or "even mention," evidence from a treating physician. Plaintiff's counsel is respectfully advised to beware that zealous advocacy does not overshadow a fair representation of the facts.

(Document No. 21, p.4). Defendant goes on to argue that Plaintiff cannot sustain her burden of establishing that the ALJ's treatment of Dr. Hedrick's checklist caused her to suffer any prejudice." (Document No. 21, pp. 3-7).

Defendant further contends that although the ALJ did not explicitly cite Dr. Hedrick's checklist, the ALJ did, for example, agree that Dr. Hedrick's restriction that Plaintiff lift no more than 10 pounds was reasonable, and included such restriction in both his RFC finding and the hypothetical posed to the VE. (Document No. 21, p.5) (citing Tr. 28, 108, 449). Defendant also contends that the jobs identified by the VE that Plaintiff could perform, as defined by the Dictionary of Occupational Titles, are largely consistent with the restrictions identified by Dr. Hedrick. (Document No. 21, pp.6-7).

The undersigned finds Defendant's arguments on this point compelling. The undersigned is persuaded that the ALJ relied upon substantial evidence in determining the weight to afford the opinion of Dr. Hedrick, and that there is not good cause for remand.

**B.     Residual Functional Capacity**

Next, Plaintiff challenges that

> the ALJ's RFC is also inaccurate because he did not consider her need for a walker or her significant right ankle pathologies. Due to numerous falls and her observably unsteady gait, Dr. Hedrick prescribed Ms. Carroll a rolling walker in February of 2011. **The ALJ did not mention this in his decision**."

(Document No. 15, p.11) (citing Tr. 433-34). Plaintiff further asserts that this "**error is significant** as the need for a walker renders and individual incapable of effective ambulation." Plaintiff argues that "if an individual is not able to ambulate effectively, then a finding of disability must be entered under 20 C.F.R. Pt. 404, Subpt. P, Appendix I § 1.00B(2)(b)." (Document No. 15, pp. 11-12).

10

Based on the foregoing, Plaintiff's second argument is also premised on a flawed representation of the ALJ's decision. As noted above, the ALJ *specifically* addressed Plaintiff's need for a walker: "Dr. Hedrick had also ordered a walker for the claimant, which she started using on February 3, 2011, for her unsteady gait." (Tr. 31) (citing Tr. 427-479). Plaintiff's argument that the ALJ "made no mention of this" is flat wrong. [5] See (Tr. 31 and Document No. 15, p.11).

Plaintiff fails to address the fact that the ALJ also noted that Plaintiff "testified that she began using a cane two months prior to the hearing for balance." (Tr. 29). The record indicates that Plaintiff reported to Dr. Hedrick that she began using a walker on February 3, 2011, but testified before the ALJ that Dr. Hedrick prescribed a cane for her, which she began using about February 2011. (Tr. 29, 93). During the hearing Plaintiff testified that she used a cane to walk a long distance, but she made no mention of using a walker. (Tr. 93-94). Other medical records also show that Plaintiff did not use a walker. See (Tr. 449, 477, 480). The ALJ indisputably took into account Plaintiff's need for a cane in his hypothetical to the VE and in the RFC finding. (Tr. 28, 109) ("she must use cane to ambulate"). Plaintiff's contention that she needed a walker, and that the ALJ failed to consider her need for a walker, are not supported by the record.

Plaintiff further asserts that "despite a recommendation for ankle surgery due to the severity of her pathologies in her right ankle, ALJ Pope did not even assess whether Ms. Carroll had a severe ankle impairment. (Document No. 15, p. 12). Plaintiff alleges that "ALJ Pope did not consider the effects of her ankle problems at Steps 3, 4 or 5 of the SEP in his decision and he did not consider this impairment in formulating Ms. Carroll's RFC. Therefore, his RFC does not

---

[5] The Court is concerned that Plaintiff's misstatement in her brief not only suggests a failure to carefully read the ALJ's decision before alleging error, but also a failure to carefully read Defendant's brief. At some point Plaintiff's error should have been recognized and corrected.

reflect all of the impairments from which Ms. Carroll suffers and is an inaccurate assessment of her ability to work." (Document No. 15, pp. 12-13).

Defendant effectively argues "it is claimant's burden, however, to establish her RFC by demonstrating how her impairment impacts her functioning." (Document No. 21, pp. 7-8). Defendant further asserts that the ALJ *did* consider Plaintiff's ankle problems, and thus ultimately found that she was "limited to sedentary work and required the use of a cane." (Document No. 21, pp.8-9) (citing Tr. 28-29, 31-32). The undersigned again finds Defendant's arguments persuasive.

### IV. CONCLUSION

The undersigned finds that there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and thus substantial evidence supports the Commissioner's decision. Richardson v. Perales, 402 U.S. 389, 401 (1971); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). As such, the undersigned will recommend that the Commissioner's decision be affirmed.

### V. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that: Plaintiff's "Motion For Judgment On The Pleadings" (Document No. 14) be **DENIED**; Defendant's "Motion For Summary Judgment" (Document No. 20) be **GRANTED**; and the Commissioner's determination be **AFFIRMED**.

### VI. TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed **within fourteen (14)**

**days** of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to de novo review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Snyder v. Ridenhour, 889 F.2d 1363, 1365 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), reh'g denied, 474 U.S. 1111 (1986).

    **IT IS SO RECOMMENDED**.

Signed: February 11, 2014

_____
David C. Keesler
United States Magistrate Judge